UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

KRISTIAN WALTERS,

Petitioner,

v.

PERRY RUSSELL, et al.,

Respondents.

Case No. 3:21-cv-00405-MMD-CSD

ORDER

## I.    SUMMARY

Before the Court is the amended petition for a writ of habeas corpus under 28 U.S.C. § 2254 brought by *pro se* Petitioner Kristian Walters, a prisoner at Northern Nevada Correctional Center. (ECF No. 10 ("Petition.").) For the reasons set forth herein, the Court will deny Walters' Petition.

## II.    BACKGROUND

Walters alleges constitutional violations relating to four judgments of conviction entered in the Second Judicial District Court for Washoe County, Nevada, bearing the case numbers CR17-0170, CR17-1685, CR17-1688, and CR17-1689.

In Case No. CR17-0170, Walters plead guilty in February 2017 to burglary for entering a location with the intent to commit the felony of issuance of a check or draft without sufficient money or credit, and/or to obtain money by false pretenses. (ECF No. 17-16.) Under the terms of the plea agreement, the parties agreed to jointly recommend "a fixed five year term of probation in this case with an underlying sentence of four to ten years in the Nevada State Department of Corrections." (*Id*. at 4.) The State also agreed to dismiss two other cases and agreed not to file charges in three cases. (*Id*.) In June 2017, the state district court entered a judgment of conviction in accordance with the terms of the plea agreement. (ECF No. 17-19.)

In October 2017, Walters was charged in three new cases—for obtaining and using the personal identifying information of another (ECF No. 17-46)[1]; burglary (ECF No. 17-47)[2]; and obtaining money, property, rent or labor by false pretenses (ECF No. 17-48)[3]. At a hearing held the following month, Walters entered guilty pleas in all three cases. (ECF No. 17-50.) At the same hearing, the state court also revoked Walters' probation on his prior burglary conviction. (*Id.*) The state court conducted a sentencing hearing in February 2018 and imposed three consecutive terms of imprisonment, also consecutive to the term in imposed in Case No. CR17-0170. (ECF No. 18-6.) As result, Walters received an aggregated sentence of 148 to 432 months. (ECF Nos. 17-9, 18-7.)

Walters filed a notice of appeal, but subsequently withdrew it. (ECF Nos. 18-8, 18-30.) In September 2018, he filed a petition for writ of habeas corpus in the state district court addressing all four cases. (ECF No. 18-35.) The court dismissed some of his claims in an order entered in October 2019 (ECF No. 18-50) and, after an evidentiary hearing on his remaining claims (ECF Nos. 19-2, 19-4), denied his petition in an order entered in May 2020 (ECF No. 19-5).

Walters appealed the denial of his petition. (ECF No. 19-9.) The Nevada Court of Appeals affirmed the lower court's decision in an order issued in May 2021. (ECF No. 19-28.)

Walters initiated this federal habeas corpus action in September 2021. (ECF No. 6 at 1.) After this Court entered a scheduling order (ECF No. 5), Walters filed his amended petition (ECF No. 10).  Noting that Walters conceded that his amended petition contained unexhausted claims, the Court gave him the choice of either abandoning the unexhausted claims or filing a motion for stay and abeyance under *Rhines v. Weber*, 544 U.S. 269 (2005). (ECF No. 11.)

---

[1]Case No. CR17-1685.

[2]Case No. CR17-1688.

[3]Case No. CR17-1689.

Walters filed a motion for stay and abeyance (ECF No. 13), but the Court determined that he did not meet the *Rhines* standard (ECF No 22). Consequently, the Court dismissed Grounds 4, 5, and 6 of the amended petition at Walters' request and directed Respondents to file an answer to the remaining claims. (*Id*.) In June 2022, Respondents filed a motion to dismiss arguing lack of exhaustion that this Court subsequently denied. (ECF Nos. 25, 27.)

In June 2023, Respondents filed an answer addressing the merits of Walters' remaining claims. (ECF No. 35.) Walters did not file a reply.

## III.   STANDARD OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  The standard of review under AEDPA is set forth in 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Emil v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). *See also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

## IV.    DISCUSSION

Walters' remaining claims allege that his custody violates his constitutional rights because his trial counsel deprived him of effective assistance of counsel. To establish a claim of ineffective assistance of counsel, a defendant must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

1   defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant
2   of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687
3   (1984).

4         Under the first *Strickland* prong, whether an attorney's performance was deficient
5   is judged against an objective standard of reasonableness. *See id*. at 687-88. Under the
6   second prong, a petitioner must "show that there is a reasonable probability that, but for
7   counsel's unprofessional errors, the result of the proceeding would have been different."
8   *Id*. at 694. To demonstrate ineffective assistance of counsel in the context of a challenge
9   to a guilty plea, a petitioner must show both that counsel's advice fell below an objective
10  standard of reasonableness as well as a "reasonable probability" that, but for counsel's
11  errors, the petitioner would not have pled guilty and would have insisted on going to trial.
12  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (holding that the two-part *Strickland* test
13  applies to challenges to guilty pleas based on the ineffective assistance of counsel). The
14  reviewing court need not consider the performance component before prejudice
15  component "or even address both components of the inquiry if the defendant makes an
16  insufficient showing on one." *Id*. at 697.

17      **A.**    **Ground 1**

18        In Ground 1, Walters alleges that he was provided ineffective assistance of counsel
19  because the two attorneys representing him in his four cases failed to consult with him
20  and each other about the "possibility of a global resolution to the multiple charges he was
21  facing." (ECF No. 10 at 3.) Walters was represented by Richard Davies in CR17-0170
22  and by Paige Dollinger in the other three cases. He claims that, as a result of counsel
23  failing to consult with each other, the court granted him probation in CR17-0170 that was
24  revoked, "which mandated that the remaining three cases run consecutively and assured
25  that Petitioner would receive the maximum underlying sentence on CR17-0170." (*Id*.)

26        Walters presented this claim in his state post-conviction proceeding. (ECF No. 18-
27  39 at 7-13.) In affirming the state district court's denial of Walters' petition for writ of
28  habeas corpus, the Nevada Court of Appeals cited *Strickland* and *Hill* and held as follows:

Walters claimed counsel was ineffective for failing to communicate with his counsel in district court case number CR17-0170 to come to a global plea agreement for all four cases. At the evidentiary hearing, both counsel testified there was communication between them via phone calls and emails. A global resolution was made with all of the cases, and Walters agreed to stipulate to the revocation of his probation. Therefore, Walters failed to demonstrate counsel were deficient. Moreover, Walters failed to demonstrate that further communication between counsel would have resulted in a more favorable outcome. Therefore, we conclude the district court did not err by denying this claim.

(ECF No. 19-28 at 2-3.) The state court record supports the court's findings and conclusions. At the evidentiary hearing on Walters' state post-conviction petition, Davies testified that, just prior to sentencing in CR17-0170, the prosecutor notified him by email that the police were investigating Walters on two new potential criminal cases but did not have enough evidence to charge him. (ECF No. 19-2 at 13-14, 17.) He further testified that he communicated this information to Walters, but Walters insisted on proceeding to sentencing. (*Id*. at 14-15, 32.) Davies also testified that, if he thought the prosecutor "was prepared to proceed on these new charges, [he] would have made an attempt to try to incorporate that into a global resolution, but that was not the case" and "Mr. Walters was adamant, adamant about going forward on sentencing." (*Id*. at 40.)

Dollinger testified that she began representing Walters shortly after he was sentenced in CR17-0170. (*Id*. at 55.) She further testified that she advised Walters to prolong the probation revocation portion of his case as long as he could so that they could attempt to reach a global resolution. (*Id*. at 58.) According to her testimony, an offer for global resolution from the State was initially not forthcoming due to "ongoing investigations regarding Mr. Walters," but the State ultimately agreed to a "package resolution to the case." (*Id*. at 58-59.) Under the terms of the plea agreements in the three cases, Walters stipulated to the revocation of his probation in CR17-0170, and the State agreed to dismiss a pending criminal case, to not file charges against Walters related to a pending investigation, and to "not pursue any transactionally related charges or enhancements resulting from the arrest in this case, including the habitual criminal

6

1   enhancement." (ECF Nos. 17-49, 18-1, 18-2.)[4] The parties were "free to argue for an

2   appropriate sentence," including whether Walters' sentences in his four cases should run

3   concurrently or consecutively. (*Id*.)

4       Both Davies and Dollinger testified about several communications between them,

5   via email and telephone, discussing a global resolution to the four cases. (*Id*. at 26-27,

6   42-44, 57-58, 61, 70-73.) Much of this testimony was supported by emails entered into

7   evidence at the hearing. (*Id*.)

8       Walters testified that Davies did not tell him about the prosecutor's email regarding

9   possible forthcoming charges and that he did not know about the email until the February

10   2018 sentencing. (*Id*. at 93.) The state district court found, however, that Davies'

11   testimony was more credible on this point. (ECF No. 19-5 at 5-6.) Walters has not

12   demonstrated the state court made an unreasonable determination of the fact in light of

13   the evidence before it. *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question

14   under [§ 2254(d)] is not whether a federal court believes the state court's determination

15   was incorrect but whether that determination was unreasonable—a substantially higher

16   threshold.") In addition, the prosecutor indicated in the email that his knowledge about the

17   new cases was limited "hearsay from the involved officers." (ECF No. 18-39.) Thus,

18   Davies did not perform below constitutional standards by having Walters go forward with

19   sentencing in CR17-0170.

20       With respect to Dollinger, the record supports a finding that she communicated

21   with Walters and Davies and obtained a favorable resolution for Walters given the

22   charges and potential sentences he would have faced if he chose not to enter guilty pleas.

23   Walters has not demonstrated a reasonable probability that additional consultation would

24   have resulted in a lesser sentence. In sum, the state court's rejection of Ground 1

25   withstands scrutiny under § 2254(d). Thus, habeas relief "shall not be granted" for the

26   claim. *See* 28 U.S.C. § 2254(d).

27

28       [4]Based on the record, Walters was facing at least 13 felony counts when he
entered these plea agreements. (ECF Nos. 17-29; 17-31;17-34;19-2 at 27; 59.)

**B.      Ground 2**

In Ground 2, Walters alleges that he was provided ineffective assistance of counsel because counsel failed to advise or consult with him about a beneficial plea offer that he would have accepted. (ECF No. 10 at 5.) He claims that, at a status conference in Sparks Justice Court, a plea offer was extended to Dollinger for him to plead to one count of burglary with a sentence of 48-120 months and the parties free to argue whether the sentence should run concurrently or consecutively to his sentence in CR17-0170. (*Id*.) He further claims that he discovered a memorandum of the offer in discovery materials and that when he asked Dollinger about it, she indicated the offer was no longer available. (*Id*.)

Walters presented this claim in his state post-conviction proceeding. (ECF No. 18-39 at 13-15.) In affirming the state district court's denial of Walters' petition for writ of habeas corpus, the Nevada Court of Appeals held as follows:

> Walters claimed counsel was ineffective for failing to communicate an offer that would have resolved all of his cases for a sentence amounting to four to ten years in prison. Walters claimed this offer was extended in justice court and he did not find out about this potential offer for several weeks. He stated that, when he did learn about it in a letter in his discovery, the State had already revoked the offer. He claimed that he destroyed the letter that contained the offer because it included information that he cooperated with the police and he did not want the other jail inmates to find it.
>
> Counsel has a duty to convey favorable plea offers to her client, and the failure to do so is objectively unreasonable. *Missouri v. Frye*, 566 U.S. 134, 145 (2012). To demonstrate prejudice in such a situation, a petitioner must show a reasonable probability of four things: (1) he would have accepted the earlier, uncommunicated plea offer; (2) the State would not have rescinded the offer prior to entry of the plea; (3) the trial court would not have rejected the guilty plea; and (4) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id*. at 147.
>
> Counsel testified that no such offer was extended to Walters and the only offer made was the offer Walters ultimately accepted. The district court found counsel's testimony credible and that Walters failed to show the State would not have rescinded the offer given the additional cases that were filed after Walters claimed the offer was extended to him. These findings are supported by the record. Because he failed to demonstrate the alleged offer was ever extended, Walters failed to demonstrate deficiency or prejudice. Therefore, we conclude the district court did not err by denying this claim.

(ECF No. 19-28 at 5-6.) Here again, the state court applied the correct federal law standard, and all its factual findings are well-supported by the record. Dollinger testified at the evidentiary hearing that she never received an offer for Walters to plead guilty to one count of burglary with a 4-10-year sentence. (ECF No. 19-2 at 61.) According to her testimony, Walters proposed that as on offer to the prosecution, but she told him that "was an unreasonable expectation on his part." (*Id*. at 61-62.) On cross-examination, Dollinger confirmed that she was "one-hundred percent confident" the prosecution never extended such an offer. (*Id*. at 74.)

The state district court found Dollinger's testimony credible. (ECF No. 19-7 at 10.) The state district court further found Walters' claim that he got rid of evidence of the offer because it showed he was a snitch to be "far-fetched." (*Id*.) Finally, the state district court found that, even if such an offer were made, it would have not remained open because it did not contemplate the numerous felonies Walters was subsequently charged with. (*Id*.) Walters has not established the any of these findings are incorrect. And, as Respondents point out, it is unlikely that the prosecutor would offer to settle all of Walters' cases with multiple victims for a sentence equal to, and potentially concurrent with, the sentence Walters would be required to serve in a case in which he was already convicted.

The Nevada Court of Appeals' rejection of Ground 2 was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in state court. Thus, the claim is denied. *See* 28 U.S.C. § 2254(d).

## C.    Ground 3

In Ground 3, Walters alleges that he was provided ineffective assistance of counsel because counsel "failed to present significant mitigating evidence that would have resulted in a lesser sentence." (ECF No. 10 at 7.) Walters faults counsel for not presenting the testimony of mental health experts (Dr. Lawrence and Dr. Jenkins) who, according to Walters, would have "discuss[ed] his diagnosed mental health issues, his suicide attempts, his alcohol and drug addictions, and his … desire to seek therapy, counseling,

1  and recovery." (*Id*.) He also contends that counsel should have had law enforcement

2  officers testify about his cooperation in the investigation of his cases. (*Id*.) Finally, he

3  claims counsel failed to advise his family members about how to provide helpful testimony

4  on his behalf. (*Id*.)

5  　　　　Walters presented this claim in his state post-conviction proceeding. (ECF No. 18-

6  39 at 15-17.) In affirming the state district court's denial of Walters' petition for writ of

7  habeas corpus, the Nevada Court of Appeals cited *Strickland* and *Hill* and held as follows:

8  　　　　Walters claimed counsel was ineffective for failing to investigate and
   present mitigating information at sentencing. Walters claimed counsel
9  　　　　should have presented the fact that Walters met with police and cooperated.
   Further, Walters claimed counsel should have presented family members
10  　　　and a friend at sentencing who would have testified they were supportive of
   Walters receiving mental health treatment and counseling for his substance
11  　　　abuse issues.....

12  　　　　Counsel provided a substance abuse evaluation and a psychological
   evaluation in mitigation at sentencing. Further, the district court found that
13  　　　Walters failed to provide any information at the evidentiary hearing that he
   cooperated with the police in case numbers CR17-1685, CR17-1688, and
14  　　　CR17-1689. As to family members and friends willing to testify, counsel
   testified she contacted them but they informed her that they were unwilling
15  　　　to write letters or offer testimony at sentencing. They told her they "had just
   had it with Mr. Walters and weren't willing to step up to the plate for him at
16  　　　sentencing to argue or present mitigation to support any type of leniency in
   sentencing." The district court found counsel's testimony credible and that
17  　　　it was corroborated by his family members, who testified at the evidentiary
   hearing that they were angry and were unwilling to testify at the sentencing
18  　　　hearing. The record supports the findings of the district court, and we
   conclude counsel was not deficient.
19

20  (ECF No. 19-28 at 6.) The Nevada Court of Appeals did not address counsel's failure to

21  present the testimony of Dr. Lawrence or Dr. Jenkins, most likely because it was not

22  mentioned in Walters' briefing to the court. (ECF Nos. 19-16, 19-26.) Dollinger testified at

23  the evidentiary hearing that Walters may have mentioned them to her, but she could not

24  recall either of those names. (ECF No. 19-2 at 88.) In any case, the state district court

25  noted that Walters provided only "vague information regarding the content of their

26  testimony," that neither doctor testified at the evidentiary hearing, and that Walters failed

27  to demonstrate "that either were available and willing to testify." (ECF No. 19-7 at 8.)

28  ///

As to Walters' other allegations, the Nevada Court of Appeals findings and conclusions are entitled to deference under 28 U.S.C. § 2254(d). Walter has not presented any evidence to substantiate his claim that he cooperated with law enforcement. Dollinger testified that she had no recollection of Walters assisting law enforcement in resolving his case. (ECF No. 19-2 at 88-89.)

As for presenting friends and family members as mitigation witnesses, Dollinger testified that she contacted Walters' stepmother and "was explicitly told that the family would not be willing to submit any letters on [Walters'] behalf … nor would they be willing to testify on his behalf at sentencing." (*Id*. at 63-64.) Dollinger also spoke to "a longtime friend of Mr. Walters" by the name of Crystal Clement. (*Id*. at 85.) At the sentencing hearing, Dollinger mentioned that Clement was there to support Walters but Clement had told her that, if called as a witness, she would tell the judge that Walters "needs to be removed from society." (ECF No. 18-6 at 16.) Walters' father, stepmother, and Clement testified at the evidentiary hearing. All three of them confirmed that they were not willing to present favorable testimony for Walters at the time of his sentencing hearing. (*Id*. at 144-45, 154, 160-161.) Walter does not identify any other friends or family members that counsel should have called on his behalf.

The Nevada Court of Appeals' rejection of Ground 3 was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in state court. Thus, the claim is denied. *See* 28 U.S.C. § 2254(d). And for the reasons set forth above, Walters' Petition is therefore denied in its entirety.

### D.    Certificate of Appealability

This is a final order adverse to a habeas petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability. Accordingly, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a certificate of appealability. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Under 28 U.S.C. § 2253(c)(2), a certificate may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). For procedural rulings, a certificate of appealability will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *See id*.

Having reviewed its determinations and rulings in adjudicating Walters's Petition, the Court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Walters' habeas claims.

## V.   CONCLUSION

It is therefore ordered that Walters's amended petition for writ of habeas corpus (ECF No. 10) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 20th Day of May 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE